UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VALERIE BERGERON | CIVIL ACTION |
| VERSUS | NO. 16-13944 |
| SOCIAL SECURITY ADMINISTRATION | SECTION "E" (3) |

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits and supplemental security income ("DIB") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.     BACKGROUND

Plaintiff filed an application for DIB and SSI on December 18, 2012, alleging a disability onset date of June 1, 2011. (Adm. Rec. at 22, 281-88). Plaintiff alleged disability due to dermatitis, high blood pressure, and high cholesterol. (*Id.* at 308). Plaintiff, born on May 25, 1961, was 50 years old on the date on which she alleged disability and 53 years old at the time of the final administrative decision. (*Id.* at 305). Plaintiff has a high-school education. (*Id.* at 309). Plaintiff has past work experience as a hair dresser/nail technician. (*Id.*).

Defendant initially denied plaintiff's applications on February 15, 2013. (*Id.* at 137-49). Plaintiff sought an administrative hearing, which defendant held on September 11, 2014. (*Id.* at 45-82). Plaintiff and a vocational expert ("VE"), Howard Steinberg, testified at the hearing.

On December 24, 2014, the ALJ issued a decision in which he found that plaintiff had not

been disabled since June 1, 2011. (*Id.* at 22-36). In the decision, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the cervical and thoracic spine, dermatitis and/or dyshidrotic eczema, periodic generalized erythematous eruption of the bilateral hands, fibromyalgia, anxiety, and adjustment disorder. (*Id.* at 25). The ALJ held that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 26). The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except that she must have a sit/stand option allowing her to alternate between sitting and standing positions at 30-50 minute intervals throughout the workday, while still attaining the requisite amount of sitting and standing required for the exertional limit. (*Id.* at 27). He also determined that plaintiff can only occasionally climb ramps, stairs, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, and scaffolds, and only frequently balance and handle and finger bilaterally; must avoid concentrated exposure to extreme temperatures, wetness, humidity, excessive vibration, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas; must avoid concentrated exposure to chemicals, and avoid all exposure to hazardous machinery and unprotected heights; and her work is limited to low stress jobs, defined as having occasional decision making, changes in the work setting, and interaction with the public. (*Id.*). The ALJ concluded that plaintiff can not perform her past relevant work. (*Id.* at 34). He concluded, however, that plaintiff can perform the jobs of courier, office mail clerk, and office helper. (*Id.* at 35). The ALJ thus denied plaintiff DIB and SSI. (*Id.* at 36).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. (*Id.* at 16-18). On June 20, 2016, the Appeals Council denied plaintiff's request. (*Id.* at 1-6).

Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991).  If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at

135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step

4

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

There are five issues on appeal:

Whether substantial evidence supports:

(1)  the ALJ's consideration of the combined effects of plaintiff's severe impairments.

(2)  the weight accorded to the opinion of plaintiff's treating physician.

(3)  the ALJ's consideration of Rule 201.00(g).

(4)  the ALJ's RFC determination.

(5)  the ALJ's determination at Step Five in the sequential analysis.

## V. ANALYSIS

### 1. Whether substantial evidence supports the ALJ's consideration of the combined effects of plaintiff's severe impairments.

Plaintiff contends that the combination of her conditions have "required repeated doctor visits, medication and loss of function and capacity. They cause pain and loss of ability to focus and persist on task. They would cause excessive absenteeism and unscheduled breaks." [Doc. #17-1 at 11]. After reviewing all of the evidence, however, the ALJ determined plaintiff's RFC based on all of the impairments that he concluded were severe. (Adm. Rec. at 25-34). Plaintiff acknowledges the impairments that the ALJ found to be severe, but she argues that he did not consider all of her conditions in combination. Plaintiff fails to cite to medical records or to other evidence in the transcript to support her argument. It appears that plaintiff bases her argument on the medical source statement of Antony Sankoorikal, M.D., her treating physician. (*Id.* at. 495-97). However, as will be discussed below, the ALJ properly accorded little weight to Sankoorikal's opinion. Moreover, Sankoorikal's opinion has nothing to do with whether the ALJ considered the impairments in combination. This Court thus rejects this argument.

## 2. Whether substantial evidence supports the weight accorded to the opinion of plaintiff's treating physician.

The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id.* "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id.* The treating physician's opinions are not conclusive. *See Brown*, 192 F.3d at 500. The opinions may be assigned little or no weight when good cause is shown. *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.

SSA Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and lists factors an ALJ must consider to assess the weight to be given to the opinion of a treating

7

physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, the regulation requires consideration of:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Plaintiff contends that the ALJ was required to give Sankoorikal's opinion substantial weight. However, the regulations state, "Generally, we give more weight to opinions from your treating sources . . ." 20 C.F.R. §§ 404.1572(c)(2), 416.927(c)(2). "Generally" does not mean "always"; it is more of a "may" than a "shall."  Thus, it is clear that an ALJ is not *required* to give a treating source opinion substantial weight, and the above paragraph makes it clear when an ALJ may give an opinion no weight. Treating physicians' opinions are generally determinative in Social Security cases, *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005), but may be rejected when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Here, the ALJ correctly determined that Sankoorikal's opinion was entitled to little weight.

The ALJ concluded that Sankoorikal had seen plaintiff on only two occasions, six months apart. (Adm. Rec. at 34, 493-94, 498-99). At the first visit on September 20, 2013, plaintiff appeared in no distress. (*Id.* at 34, 493-94). At her second visit on March 28, 2014, plaintiff was in "severe" distress, but there did not appear to be any intervening injury or worsening in her condition to support such a change. (*Id.* at 34, 493-94, 498-99). The ALJ also noted that Sankoorikal's opinion was contradicted by plaintiff's own testimony about her ability to lift and walk. (*Id.* at 34, 64, 495-97).

8

The ALJ also considered other opinion testimony in the record supported by objective medical evidence, including the opinion of Robert Shefsky, M.D., who performed a consultative examination of plaintiff on August 21, 2014. (*Id.* at 33, 599-611). After performing an extensive physical examination of plaintiff, Shefsky determined that plaintiff can perform a range of medium work. (*Id.* at 30, 33, 599-611). The ALJ gave some weight to Shefsky's opinion but rejected portions of it based on Shefsky's apparent reliance on plaintiff's subjective complaints. Nevertheless, Shefsky clearly found plaintiff capable of a greater range of work in terms of lifting, standing, and sitting than Sankoorikal, and the ALJ concluded that his opinion was supported by the objective medical evidence in the record from his medical examination. (*Id.* at 495-97, 599-611). It is well-established law that an ALJ may give more weight to the opinion of a consultative examiner when the examiner's opinion is based on a more thorough evaluation of a claimant's impairments and resulting limitations. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987).

The ALJ has sole responsibility for determining a claimant's disability status and is entitled to determine the credibility of medical experts and lay witnesses and weigh their opinions and testimony accordingly. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "It is, of course, for the Secretary to decide what weight to accord various medical reports." *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). Any evaluation of the accuracy of the ALJ's analysis of medical evidence is in large part beyond the scope of this Court's review. *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016). Plaintiff's "argument comes down to the weight the ALJ places on Dr. Culver's report – and it is the ALJ's task, not ours, to weigh evidence." *Garcia v. Colvin*, 622 F. App'x 405, 408-409 (5th Cir. 2015). The "ALJ performed her role of weighing conflicting evidence [from physicians] and resolving the conflict, and we perform our limited role of ensuring

that this decision is supported by substantial evidence…" *Heck v. Colvin*, 2017 WL 83387, at *3 (5th Cir. 2017). The ALJ is thus entitled to determine the credibility of medical experts and weigh their opinions accordingly. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Because the ALJ properly weighed the evidence and the credibility of the experts' opinions, and because the ALJ gave supported reasons for according little weight if any to Sankoorikal's opinion, the Court rejects this argument as well.

### 3. Whether substantial evidence supports the ALJ's consideration of Rule 201.00(g).

The Court makes short shrift of this argument. Plaintiff contends that the ALJ should have relied on Rule 201.00(g) of the Medical-Vocational Guidelines because she is an individual approaching advanced age and has no transferable skills. But Rule 201.00(g) applies only to individuals who are limited to sedentary work. Here, the ALJ found that plaintiff can perform a range of light work, (*Id.* at 27-24), and, as noted below, this conclusion is supported by substantial evidence. Thus, Rule 201.00(g) does not apply to plaintiff, and the Court dismisses this argument.

### 4. Whether substantial evidence supports the ALJ's RFC determination.

Plaintiff first contends that the ALJ erred when he failed to determine whether plaintiff can perform work activity on a sustained basis. However, the ALJ's RFC determination includes an assessment of the nature and extent of the individual's limitations and determines that the claimant can work "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c). 416.945(b)-(c); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *3 (July 2, 1996). Further, SSR 96-8p makes a distinction between what the ALJ must consider, and what the ALJ must articulate in the written opinion. 1996 WL 374184 at *7. SSR 96-8p does not require that an ALJ discuss all of a claimant's abilities on a function-by-function basis; rather, an ALJ must explain how the evidence supports

conclusions about a claimant's limitations and discuss the claimant's ability to perform sustained work activities as the "Narrative Discussion Requirements" are set out. *See id.*

Here, the ALJ met these requirements when he explicitly outlined the medical evidence, symptoms, and diagnoses of plaintiff's impairments and assessed her RFC to perform light work. (Adm. Rec. at 27-34). The ALJ noted that plaintiff's degenerative disc disease of the cervical and thoracic spine, dermatitis and/or dyshidrotic eczema, periodic generalized erythematous eruption of the bilateral hands, fibromyalgia, anxiety, and adjustment disorder caused limitations in her ability to lift, carry, stand, walk, sit, climb, stoop, kneel, crouch, crawl, balance, handle, finger, work around extreme temperatures, wetness, humidity, excessive vibrations, chemicals, hazardous machinery, and unprotected heights, as well as requiring low stress jobs with only occasional decision making, changes in the work setting, and interaction with the public. (*Id.* at 27-34). To be blunt, this is one of the most narrowly-tailored RFCs that this Court has ever seen. The ALJ also noted that the objective medical evidence did not support any additional limitations other than those included in his assessment. (*Id.* at 27-34). Such evidence supports the ALJ's conclusion that plaintiff can perform work with limitations on a regular and continuing basis.

The Fifth Circuit has never required that an ALJ make a specific finding that a claimant can maintain a job on a regular and continuing basis unless "the claimant's ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The Fifth Circuit has further held that claims that whether one has "good days and bad days" do not rise to the level anticipated by *Frank*. *Perez*, 415 F.3d at 465.

While plaintiff may have experienced periodic exacerbations of her symptoms, the evidence does not demonstrate that her conditions waxed and waned resulting in "periods of incapacity." *See Frank*, 326 F.3d at 619. As plaintiff points to no evidence to show that she experiences "periods of

incapacity," she fails to show that her impairments waxed and waned as required by Fifth Circuit case law, and the ALJ was not required to make a separate finding regarding her ability to sustain employment.

Plaintiff further maintains that the ALJ did not include in his hypothetical questions to the VE the "combined effects of all her problems, including the effects of medications, would certainly cause absences, unscheduled breaks, and productivity problems." [Doc. #17-1 at 13-14]. But these limitations arise from Sankoorikal's opinion to which the ALJ properly accorded little weight, as this Court has outlined above. Thus, the Court finds that there was no reason for the ALJ to include such limitations in his RFC assessment or the hypothetical questions to the vocational expert. These limitations are also inconsistent with the record that shows that she can perform work-related mental activities involving understanding, memory, sustained concentration and persistence, social interaction, and adaptation. (Adm. Rec. at 492). Plaintiff also admitted that she had no difficulty following complex directions or understanding instructions. (*Id.* at 582). An ALJ need only incorporate into the hypothetical question those claimed disabilities "supported by the evidence *and recognized by the ALJ.*" *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (emphasis added); *Roberts v. Colvin*, 946 F. Supp. 2d 646 (S.D. Tex. 2013) (non-severe mental imps properly excluded). Thus, because the ALJ rejected Sankoorikal's limitations as inconsistent and unsupported by the record, he had no duty to incorporate them into his hypothetical question to the vocational expert. Therefore, the Court finds that plaintiff's argument is without merit.

5.  **Whether substantial evidence supports the ALJ's determination at Step Five in the sequential analysis.**

The Court finds that the ALJ properly relied on the VE's testimony to find that there are a significant number of jobs in the national economy that plaintiff can perform. Plaintiff argues that neither the VE nor the ALJ "gave any evidence whatsoever to substantiate the numbers of jobs claimed

12

to exist statewide or nationwide." [Doc. #17-1 at 15]. Courts in this circuit, however, have recognized that ALJs are under no obligation to identify the sources of their figures or to provide supporting documentation. *Gillespie v. Astrue*, 2014 WL 1168872, at *9 (W.D. La. March 21, 2014) (noting that the Federal Rules of Evidence do not apply in Social Security proceedings, and ALJs who conduct hearings have no evidentiary gate-keeping duties). VEs who testify at benefits hearings must generally identify the sources that they have consulted in reaching their conclusions, but they are under no obligation to identify with greater specificity the source of their figures or to provide supporting documentation. The ALJs who conduct SSA hearings have no *Daubert* gate-keeping duty for VE testimony. *Brault v. Social Sec. Admin.*, 683 F.3d 443, 449–450 (2d Cir. 2012); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n. 4 (9th Cir. 2005) ("a vocational expert's recognized expertise provides the necessary foundation for his or her testimony"); *Gangelhoff v. Apfel*, No. C99-4050, 2000 WL 34032675 (N.D. Iowa Aug. 29, 2000) ("It must be remembered that a Social Security administrative hearing is a non-adversarial hearing, whereas the *Daubert* standard applies to adversarial proceedings where the Federal Rules of Evidence apply. Therefore, . . . the *Daubert* standard does not apply to the use of vocational expert testimony in a Social Security administrative hearing.").

Moreover, plaintiff does not allege nor does she provide any evidence that the numbers that the VE cited and the ALJ accepted are wrong or do not constitute significant numbers. *Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (holding that 50,000 jobs in the nation was significant); *McGee v. Astrue*, Civ. A. No. 08-0831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009) (finding that 150 jobs in the state of Louisiana and 18,760 in national economy constitute significant numbers); *Mercer v. Halter*, No. Civ. A. 4:00-CV-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar.7, 2001) (finding that 500 jobs in Texas and 5,000 jobs in national economy constitute significant

numbers). If the VE can enumerate a significant number of jobs existing in one or more occupations that plaintiff can perform, the ALJ's decision should be affirmed. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

Here, the VE testified that the job of courier had 85,000 jobs in the national economy and 700 jobs in the state of Florida; that the job of office mail clerk had 139,000 jobs in the national economy and 3,100 jobs in the state of Florida; that the job of office helper had 207,000 positions in the national economy and approximately 10,400 positions in Florida. (Adm. Rec. at 77). Plaintiff has given this Court no reason to doubt the VE's testimony, and these numbers are well within the "significant numbers" range for purpose of this circuit. This argument thus lacks merit.

## VI.  CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 18th day of May, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**